**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

——————————————————— x

ELI DAYAN, individually on behalf of himself and : all others similarly situated, :
                                                 :   Case No.
                                                 :
                    Plaintiff, :
v. :
                                                 :
                                                 :   **CLASS ACTION COMPLAINT**

SWISS-AMERICAN PRODUCTS, INC., :
                                                 :   **JURY TRIAL DEMANDED**
                    Defendant. :
                                                 :
                                                 :

——————————————————— x

Plaintiff, individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

**NATURE OF ACTION**

1.       Plaintiff Eli Dayan ("Plaintiff") brings this putative class action against Swiss-American Products, Inc. ("Swiss-American" or "Defendant") on behalf of a "Class," as is defined below, of individuals who purchased the following product at any time during the applicable statute of limitations period up to and including the present (the "Class Period"):

- EltaMD UV Aero ("the product").

2.       Swiss-American owns the Elta MD trademark.  Using this trademark, Swiss-American sells sunscreens that purportedly "help prevent sunburn and decrease the risk of skin cancer."  These sunscreens, including the product, are available through physicians who are authorized to dispense it.

1

3.      Swiss-American represents that the product "provides sheer but sure sun protection" and is SPF-45.

4.      SPF is an acronym for sunburn protection factor.

5.      As is explained by the Food and Drug Administration ("FDA"), "SPF is a measure of how much solar energy (UV radiation) is required to produce sunburn on protected skin (i.e., in the presence of sunscreen) relative to the amount of solar energy required to produce sunburn on unprotected skin. ***As the SPF value increases, sunburn protection increases***.[1]" (emphasis added).

6.      According to the Environmental Protection Agency, UV radiation, a known carcinogen, can have a number of harmful effects on the skin. The two types of UV radiation that can affect the skin—UVA and UVB—have both been linked to skin cancer and a weakening of the immune system.[2]

7.      The FDA has also provided the following explanation[3] about SPF values:

> The SPF value indicates the level of sunburn protection provided by the sunscreen product. All sunscreens must be tested according to an SPF test procedure. The test measures the amount of ultraviolet (UV) radiation exposure it takes to cause sunburn when a person is using a sunscreen in comparison to how much UV exposure it takes to cause a sunburn when they do not use a sunscreen. The product is then labeled with the appropriate SPF value indicating the amount of sunburn protection provided by the product. ***Higher SPF values (up to 50) provide greater sunburn protection***. Because SPF values are determined from a test that measures protection against sunburn caused by ultraviolet B (UVB) radiation, SPF values only indicate a sunscreen's UVB protection. (emphasis added).

---

[1] http://www.fda.gov/aboutfda/centersoffices/officeofmedicalproductsandtobacco/cder/ucm106351.htm
[2] http://www2.epa.gov/sites/production/files/documents/sunscreen.pdf
[3] http://www.fda.gov/Drugs/ResourcesForYou/Consumers/BuyingUsingMedicineSafely/UnderstandingOver-the-CounterMedicines/ucm258468.htm#Q3_What_does_the_SPF

8.     The Food, Drug and Cosmetic Act ("FDCA") prohibits sunscreen labeling that is false or misleading in any particular and such products are deemed misbranded.  *See* 21 U.S.C. § 352(a); 21 U.S.C. § 362(a).

9.     21 C.F.R. § 201.327(a)(1) requires that every sunscreen must contain an SPF value derived from FDA-approved testing.

10.     Reasonable consumers have become familiar with SPF values because SPF values have appeared on sunscreen product labels for decades.  And, reasonable consumers have correctly learned to associate higher SPF values with greater sun protection.

11.     Accordingly, reasonable consumers expect that when they purchase and use a sunscreen labeled SPF 45, they are better protected against sunburn causing UVB rays than if they purchase and use a sunscreen labeled as, for instance, SPF 18.

12.     The purchase prices for Swiss-American's Elta MD sunscreens correspond to and are commensurate with their SPF values. Thus, the product -- which displays an SPF 45 value -- is obtainable by a consumer if the consumer pays a premium price over and above sunscreen products with lower SPF values.

13.     In May 2015, Consumer Reports tested Elta MD sunscreens and determined that the SPF levels were below their claimed values and less than SPF 30.

14.     After the May 2015 Consumer Reports testing results were published, Defendant did not correct its practices.  Instead, Defendant published a document entitled "FAQs about EltaMD UV Aero" in which Defendant spuriously attempted to discredit Consumer Reports' testing protocol.

15.     Plaintiff, unaware of the Consumer Reports testing and results, purchased the product through his physician in the summer of 2015.  To his dismay the product did not work.

Plaintiff was induced to pay a premium price for the product -- over and above other sunscreens with lower or similar SPF values -- based upon the on-label representation that it had an SPF value of 45.

16.     Thereafter, Plaintiff became aware of the Consumer Reports testing and results. An independent laboratory (i3 Engineering Sciences LLC.) also conducted tests on the product. **See Exhibit A.**

17.     That testing -- which was compliant with the FDA testing protocol for SPF validation – confirmed the findings of the consumer report test and revealed that Defendant has scammed and is continuing to scam consumers into paying premium prices for a product labeled as SPF 45 when in actuality the product's true SPF value is only 18 - less than half of the SPF value that Defendant advertises.

18.     Not only is Defendant's practice fraudulent and violative of consumer protection statues, but it is potentially hazardous to the health of Defendant's customers, who reasonably believe and act upon the reasonable belief that they have a greater degree of sun protection than they actually have.

19.     Defendant's conduct is thus wanton and reckless.

20.     Defendant misleads and deceives consumers by labeling its product and falsely advertising to the public that its product is an SPF 45, when, in fact, it is merely the equivalent of SPF 18.

21.     Defendant's material misrepresentation induced Defendant's consumers, including Plaintiff and members of the Class, to purchase Defendant's product at a premium price.  Plaintiff and members of the Class relied on Defendant's false and misleading misrepresentations.

22.     Plaintiff would purchase the product again if its ingredients were changed so that it had the SPF value represented on the product's label.

## JURISDICTION AND VENUE

23.     Jurisdiction is proper pursuant to 28 U.S.C. 1332(d) (2).  Plaintiff is a citizen of the State of New York and resides in the City of Brooklyn, and Defendant is a company organized and existing under the laws of Texas with its principal place of business in Carrollton, Texas.  Upon information and belief, the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

24.     This Court has personal jurisdiction over the Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

25.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York.  Defendant has, at all relevant times, been doing business in the Eastern District of New York, and throughout the state.

## THE PARTIES

26.     Plaintiff is a citizen of the State of New York and resides in Brooklyn.  During the class period, Plaintiff purchased the product through his physician in the State of New York. Plaintiff purchased the product at a premium because he saw the product's labeling, which stated, *inter alia*, that the product had an SPF value of 45.

27.     Defendant is incorporated under the laws of Texas, and its principal place of business is located at 2055 Luna Rd., Carrollton, Texas 75006.

28.     The members of the proposed Class consist of consumers who live in New York State and throughout the United States who purchased the product.

**CLASS ALLEGATIONS**

29.     Plaintiff brings this matter on behalf of himself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Consumers of the product were uniformly impacted by and exposed to this misconduct.  Accordingly, this Amended Complaint is uniquely situated for class-wide resolution, including injunctive relief.

30.     The Class is defined as all consumers who purchased the product anywhere in the United States during the Class Period (the "Class").

31.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the product in the State of New York at any time during the Class Period (the "New York Subclass").

32.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

33.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

34.     Numerosity:  Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers nationwide who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

35.     Common Questions of Fact and Law:  The questions of law and fact common to the Plaintiff and members of the Class predominate over any questions which may affect individual Class Members and include, but are not limited to:

6

a)  Whether Swiss-American is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the product;

b)  Whether Swiss American's misconduct set forth in this Complaint demonstrates that Swiss American has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its product.

c)  Whether Swiss-American made false and/or misleading statements to the Class and the public concerning the content, characteristics, efficacy and features of its product.

d)  Whether Swiss-American's false and misleading statements concerning its product and its concealment of material facts regarding the content, safety, and efficacy of its product were likely to deceive the public.

e)  Whether Plaintiff and members of the Class are entitled to injunctive relief; and

f)  Whether Plaintiff and members of the Class are entitled to money damages under the same causes of action as the other members of the Class.

36.    Typicality:  Plaintiff's claims are typical of the claims of each member of the Class, in that, every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the product.  Plaintiff is entitled to relief under the same causes of action as the other members of the Class.

37.    Adequacy:  Plaintiff is an adequate Class representative because his interests do

not conflict with the interests of other members of the Class he seeks to represent; his consumer fraud claims are common to all members of the Class and he has a strong interest in vindicating his rights; he has retained counsel competent and experienced in complex class action litigation and he intends to vigorously prosecute this action.  Plaintiff has no interests which conflict with those of the class.  The interests of members of the Class will be fairly and adequately protected by Plaintiff and his counsel.  Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and members of the Class.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

38.     The Class is properly brought and should be maintained as a class action under Rule 23(b) because a class action is superior.  Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any other questions affecting only individual members of the Class. With regard to the proposed Class, class-wide issues fully predominate over any individual issue because no inquiry into individual conduct is necessary, just a narrow focus on Defendant's deceptive and misleading product marketing and labeling practices.  In addition, this class action is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*:

39.     <u>Superiority</u>:  A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a)  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

8

b) The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, expensive, if not totally impossible, to justify individual actions;

c) When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d) This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims;

e) Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude maintenance as a class action;

f) This class action will assure uniformity of decisions among Class Members; and

g) The proposed Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation.

## **INJUNCTIVE CLASS RELIEF**

40.     Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading consumers about the true and accurate SPF value of its product.  Since Defendant's conduct has been uniformly directed at all consumers nationwide, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy the continuing misconduct.

41.     The injunctive class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a) <u>Numerosity</u>:  Individual joinder of the injunctive class members would be wholly impracticable.  Defendant's product has been purchased by thousands of persons across the United States.

b) <u>Commonality</u>:  Questions of law and fact are common to members of the class.  Defendant's misconduct was uniformly directed at all consumers. Thus, all members of the class have a common cause to stop Defendant's misleading conduct through an injunction.  Since the issues presented by this injunctive class relate exclusively to Defendant's misconduct, resolution of these questions would be necessarily common to the entire class.  Moreover, there are common questions of law and fact inherent in the resolution of an injunctive class, including, *inter alia*:

i. Resolution of the issues presented in the 23(b)(3) class;

ii. Whether members of the class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

iii. Whether, on equitable grounds, Defendant should be prevented from continuing to omit material information from its labeling (i.e. that the true SPF value of the product is less than half of what it is advertised to be).

c) <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the injunctive class because their claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading product marketing, labeling, and

practices). Plaintiff is a typical class representative, because, like all members of the injunctive class, he purchased the product, which was sold unfairly, and deceptively to consumers within the United States.

d) <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive class. His consumer protection claims are common to all members of the injunctive class and he has a strong interest in vindicating his rights. In addition, Plaintiff and the Class are represented by counsel who are competent and experienced in both consumer protection and class action litigation.

42. The injunctive class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive class. Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive class (*i.e.* Defendant has marketed its product using the same misleading and deceptive product labeling to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive class, as Defendant would be prevented from continuing its misleading and deceptive product marketing practices and would be required to honestly disclose to consumers the SPF value associated with its product.

## FIRST CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and the Class and/or New York Subclass)**

43. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

44. New York General Business Law Section 349 ("GBL § 349") declares unlawful

"[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state…"

45.     GBL § 349(h) directs that "any person who has been injured by reason of any violation of [GBL § 349] may bring an action in his own name to enjoin such unlawful act or practice…"

46.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and members of the Class and/or New York Subclass seek monetary damages and the entry of preliminary and permanent injunctive relief against Swiss-American, enjoining it from inaccurately describing, labeling, marketing, and promoting its product.

47.     There is no adequate remedy at law.

48.     Defendant misleadingly, inaccurately and deceptively presents its product.

49.     Defendant's improper consumer-oriented conduct -- including labeling and advertising the product as "SPF 45" -- is misleading in a material way in that it, *inter alia*, induced Plaintiff and members of the Class and/or New York Subclass to purchase and pay a premium for Defendant's product over and above sunscreen products with lower or similar SPF values.

50.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly and with reckless disregard for the truth.

51.     Plaintiff and members of the Class and/or New York Subclass have been injured inasmuch as they paid a premium for a product that was—contrary to Defendant's representations—not SPF 45.  Accordingly, Plaintiff and members of the Class and/or New York Subclass received less than what they bargained and/or paid for.

52.     Defendant's advertising and product labeling induced the Plaintiff and members of the Class and/or New York Subclass to buy Defendant's product.

53.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of its business in violation of New York General Business Law § 349(a) and Plaintiff and members of the Class and/or New York Subclass have been damaged thereby.

54.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and members of the Class and/or New York Subclass are entitled to monetary damages, treble and punitive damages, injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the Class and/or New York Subclass)

55.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

56.     N.Y. Gen. Bus. Law § 350, provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

57.     N.Y. Gen. Bus. Law § 350-a(1) provides , in part, as follows:

> The term 'false advertising' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is

misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual…

58.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's product inasmuch as they misrepresent that the product has an SPF value of 45.

59.     Plaintiff and members of the Class and/or New York Subclass have been injured inasmuch as they relied upon the labeling and advertising and paid a premium for a product that was—contrary to Defendant's representations—not SPF 45.  Accordingly, Plaintiff and members of the Class and/or New York Subclass received less than what they bargained and/or paid for.

60.     Defendant's advertising and product labeling induced the Plaintiff and members of the Class and/or New York Subclass to buy Defendant's product.

61.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly and with reckless disregard for the truth.

62.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

63.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and on the product's labeling.

64. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the product were and continue to be exposed to Defendant's material misrepresentations.

65. As a result of Defendant's false or misleading labeling and advertising, Plaintiff and members of the Class and/or New York Subclass are entitled to monetary damages, treble and punitive damages, injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF NEW YORK GBL LAW § 350-a(1) BY OMISSION**
**(On Behalf of Plaintiff and the Class and/or New York Subclass)**

66. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67. N.Y. Gen. Bus. Law § 350-a(1) expressly covers material omissions:

> In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual…

68. Defendant's product labeling and advertising contains misleading and/or unfair

material omissions concerning Defendant's product, including that the true and accurate SPF value for the product is well below SPF 45.

69.     Plaintiff and members of the Class and/or New York Subclass have been injured inasmuch as they relied upon the labels and advertising and paid a premium for a product that—contrary to Defendant's labels and advertising—contained an SPF value well below 45.

70.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly and with reckless disregard for the truth.

71.     Defendant's conduct of omitting material facts in its advertising and labeling disseminated in New York constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

72.     Defendant's material misrepresentations by way of omissions, as described in this Complaint, were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the product were and continue to be exposed to Defendant's material misrepresentations by way of omissions.

73.     Defendant's advertising and product labeling induced the Plaintiff and members of the Class and/or New York Subclass to buy the product.

74.     Plaintiff and members of the Class and/or New York Subclass relied on Defendant's advertising, which was deceptive, false, and contained material omissions.

75.     As a result of Defendant's false or misleading advertising and labeling, Plaintiff and members of the Class and/or New York Subclass are entitled to monetary damages, treble and punitive damages, injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of Plaintiff and All Class Members)**

76.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

77.     Plaintiff and Class Members have been injured as a result of Defendant's violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiff and Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

78.     Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

    a.     **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

    b.     **Arizona:** Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq*.

    c.     **Arkansas:** Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

    d.     **California:** Defendant's practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq*., Unfair Competition Law, California Business and Professions Code § 17200, *et seq*., and False Advertising Law, California Business and Professions Code § 17500, *et seq*.

    e.     **Colorado**: Defendant's practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

17

f.   **Connecticut:**  Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g.   **Delaware:**  Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.   **District of Columbia:**  Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i.   **Florida:**  Defendant's practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j.   **Hawaii:**  Defendant's practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k.   **Idaho:**  Defendant's practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l.   **Illinois:**  Defendant's acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m.   **Indiana:**  Defendant's practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n.   **Kansas:**  Defendant's practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq*.

o.   **Kentucky:**  Defendant's practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p. **Maine:** Defendant's practices were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me. Rev. Stat. Ann. § 1101, *et seq.*

q. **Maryland:** Defendant's practices were and are in violation of Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

r. **Massachusetts:** Defendant's practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

s. **Michigan:** Defendant's practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

t. **Minnesota:** Defendant's practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u. **Missouri:** Defendant's practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

v. **Nebraska:** Defendant's practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

w. **Nevada:** Defendant's practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.   **New Hampshire:**  Defendant's practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

y.   **New Jersey:**  Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.   **New Mexico:**  Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.   **New York:**  Defendant's practices were in and are in violation of New York's Gen. Bus. Law §§ 349, *et seq.*

bb.   **North Carolina:**  Defendant's practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq.*

cc.   **North Dakota:**  Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

dd.   **Ohio:**  Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

ee.   **Oklahoma:**  Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ff.   **Oregon:**  Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

gg. **Pennsylvania:** Defendant's practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

hh. **Rhode Island:** Defendant's practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

ii. **South Dakota:** Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

jj. **Texas:** Defendant's practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

kk. **Utah:** Defendant's practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

ll. **Vermont:** Defendant's practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

mm. **Washington:** Defendant's practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

nn. **West Virginia:** Defendant's practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*

*oo.* **Wisconsin:** Defendant's practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

pp. **Wyoming:**  Defendant's practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq*.

79.     Defendant violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the product is SPF 45.

80.     Contrary to Defendant's representations, the product is not SPF 45.

81.     Defendant's misrepresentations were material to Plaintiff's and Class Members' decision to purchase and pay a premium for the product over and above other sunscreen products with lower or similar SPF values.

82.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

83.     As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members purchased and paid a premium for the product.

84.     As a result of Defendant's violations, Defendant has been unjustly enriched.

85.     Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

### FIFTH CLAIM FOR RELIEF
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301 *et seq.*
### (On Behalf of Plaintiff and the Class)

86.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

87.     Plaintiff brings this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

88.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

89.     The product is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

90.     Plaintiff and the other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

91.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

92.     Defendant's written statements that the product has an SPF value of 45 is a statement made in connection with the sale of the product that relates to the nature of the product and affirms and promises that it is defect free—*i.e.*, not less than SPF 45—and, as such, is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

93.     As alleged herein, Defendant has breached this written warranty by selling consumers a product that, in fact, is not "SPF 45" as warranted and thus does not conform to the Defendant's written warranty, violating the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and causing Plaintiff and the other members of the Class injury and damage in an amount to be proven at trial.

94.     Furthermore, as alleged herein, Defendant breached the above-described written warranty by selling consumers a product that, in fact, has an SPF value well below 45.  The label on the product constitute an affirmation and a promise that it is defect free, *i.e*., not less than 45 SPF.  Given that the product's true SPF value is less than 45 SPF, the product is defective and Defendant has violated the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 *et seq.*, causing Plaintiff and other members of the Class injury and damage in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF
### BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiff and the Class)**

95.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

96.     Defendant provided the Plaintiff and members of the Class an express warranty in the form of written and oral affirmations of fact promising and representing that its product had an SPF value of 45.

97.     This affirmation of fact was not couched as "belief" or "opinion," and was not a "generalized statement[] of quality not capable of proof or disproof."

98.     This affirmation of fact became part of the basis for the bargain and was material to the transactions of the Plaintiff and of members of the Class.

99.     Plaintiff and members of the Class reasonably relied upon the Defendant's affirmation of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy the product.

100.    Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiff—on behalf of himself and the other members of the Class—placed the

Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which it refused to do.

101.    Contrary to Defendant's affirmation of fact, Defendant breached the express warranty because the product's SPF value is less than half of what it is advertised to be, thereby also breaching the following state warranty laws;

      A.  Code of Ala. § 7-2-313;

      B.  Alaska Stat. § 45.02.313;

      C.  A.R.S. § 47-2313;

      D.  A.C.A. § 4-2-313;

      E.  Cal. Comm. Code § 2313;

      F.  Colo. Rev. Stat. § 4-2-313;

      G.  Conn. Gen. Stat. § 42a-2-313;

      H.  6 Del. C. § 2-313;

      I.  D.C. Code § 28:2-313;

      J.  Fla. Stat. § 672.313;

      K.  O.C.G.A. § 11-2-313;

      L.  H.R.S. § 490:2-313;

      M.  Idaho Code § 28-2-313;

      N.  810 I.L.C.S. 5/2-313;

      O.  Ind. Code § 26-1-2-313;

      P.  Iowa Code § 554.2313;

      Q.  K.S.A. § 84-2-313;

      R.  K.R.S. § 355.2-313;

S.   11 M.R.S. § 2-313;

T.   Md. Commercial Law Code Ann. § 2-313;

U.   106 Mass. Gen. Laws Ann. § 2-313;

V.   M.C.L.S. § 440.2313;

W.   Minn. Stat. § 336.2-313;

X.   Miss. Code Ann. § 75-2-313;

Y.   R.S. Mo. § 400.2-313;

Z.   Mont. Code Anno. § 30-2-313;

AA.   Neb. Rev. Stat. § 2-313;

BB.   Nev. Rev. Stat. Ann. § 104.2313;

CC.   R.S.A. 382-A:2-313;

DD.   N.J. Stat. Ann. § 12A:2-313;

EE.   N.M. Stat. Ann. § 55-2-313;

FF.   N.Y. U.C.C. Law § 2-313;

GG.   N.C. Gen. Stat. § 25-2-313;

HH.   N.D. Cent. Code § 41-02-30;

II.   O.R.C. Ann. § 1302.26;

JJ.   12A Okl. St. § 2-313;

KK.   Or. Rev. Stat. § 72-3130;

LL.   13 Pa. Rev. Stat. § 72-3130;

MM.   R.I. Gen. Laws § 6A-2-313;

NN.   S.C. Code Ann. § 36-2-313;

OO.   S.D. Codified Laws, § 57A-2-313;

PP.   Tenn. Code Ann. § 47-2-313;

QQ.   Tex. Bus. & Com. Code § 2.313;

RR.   Utah Code Ann. § 70A-2-313;

SS.   9A V.S.A. § 2-313;

TT.   Va. Code Ann. § 59.1-504.2;

UU.   Wash. Rev. Code Ann. § 6A.2-313;

VV.   W. Va. Code § 46-2-313;

WW.   Wis. Stat. § 402.313;

XX.   Wyo. Stat. § 34.1-2-313.

102.   As a direct and proximate result of Defendant's breaches of express warranty,

Plaintiff and the other members of the Class were damaged in the amount of the price they paid

for the product, in amounts to be proven at trial.

**SEVENTH CLAIM FOR RELIEF**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of Plaintiff and the Class)**

103.   Plaintiff repeats and realleges each and every allegation contained in the

foregoing paragraphs as if fully set forth herein.

104.   Defendant is in the business of manufacturing, producing, distributing, and selling

sunscreen products.

105.   Under the Uniform Commercial Code's implied warranty of merchantability, the

Defendant warranted to Plaintiff and the members of the Class that the product has an SPF value

of 45.

106.   Defendant breached the implied warranty of merchantability in that the

product materially deviates from the label and product description, and reasonable consumers expecting a product that conforms to its label would not accept the product if they knew that the SPF value of the product is less than half of what it is purported to be.

107.    Defendant breached the implied warranty of merchantability.  The product does not disclose that, in actuality, the SPF value is less than half of what is described on the label.  Furthermore, the product advertising falsely states that the product has an SPF value of 45.  Reasonable consumers expecting a product that conforms to its label would not accept the product if they knew that the product's SPF value is less than half of what is described on the label.

108.    Defendant breached the implied warranty of merchantability in that the product does not conform to the promises or affirmations of fact made on the product's containers or labels or literature.

109.    Within a reasonable time after the Plaintiff discovered that the product is not what it purports to be, Plaintiff notified the Defendant of such breach.

110.    The inability of the product to meet the label description was wholly due to the Defendant's fault and without Plaintiff's fault or neglect, and was solely due to the Defendant's manufacture and distribution of the product to the public.

111.    As a result of the foregoing, Plaintiff and the members of the Class have been damaged in the amount paid for the product, together with interest thereon from the date of purchase.

## EIGHTH CLAIM FOR RELIEF
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### (On Behalf of Plaintiff and the Class)

112.    Plaintiff repeats and realleges each and every allegation contained in the

foregoing paragraphs as if fully set forth herein.

113.    Plaintiff and other members of the Class bought the product with the specific

purpose of buying a sunscreen with an SPF value of 45.

114.    Defendant knew or had reason to know that Plaintiff and other members of the

Class were buying a product with the specific purpose of obtaining a sunburn protection factor of

45.

115.    Plaintiff and other members of the Class, intending to use sunscreen with a

sunburn protection factor of 45 relied on the Defendant to select the product to fit the specific,

intended use.

116.    Defendant held itself out as having particular knowledge of the product's values

and content.

117.    The reliance by Plaintiff and other members of the Class on Defendant to select a

product to fit the particular purpose was reasonable given Defendant's statements and

representations in its advertising and labels.

118.    The reliance by Plaintiff and other members of the Class on Defendant to select a

product to fit the particular purpose was reasonable given Defendant's particular knowledge of

the product it manufactures and distributes.

119.    As a result of the foregoing, Plaintiff and other members of the Class have been

damaged in the premium amount paid for the product, together with interest thereon from the

date of purchase.

**NINTH CLAIM FOR RELIEF**
**COMMON LAW UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

120.    Plaintiff repeats and realleges each and every allegation contained in the

foregoing paragraphs as if fully set forth herein.

121.     Plaintiff, on behalf of himself and consumers nationwide, brings a common law claim for unjust enrichment.

122.     Defendant's conduct violated New York General Business Law §§ 349, 350, and 350-a by manufacturing, advertising, marketing and selling its product while misrepresenting and omitting material facts.  Defendant's conduct also violated, *inter alia*, New York General Business Law 392-b by:

> a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and
>
> b) selling or offering for sale an article, which to their knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

123.     Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its product at the expense, and to the detriment or impoverishment, of the Plaintiff and other members of the Class, and to the Defendant's benefit and enrichment.  Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

124.     Plaintiff and other members of the Class conferred significant financial benefits and paid substantial compensation to Defendant for a product that was not as Defendant represented.

125.    Under common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by overpayments made by Plaintiff and other members of the Class

126.    Plaintiff and other members of the Class seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and other members of the Class may seek restitution.

## TENTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
### (On Behalf of Plaintiff and All Class Members)

127.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

128.    Defendant, directly, or through its agents and employees, made false representations, concealments, and non-disclosures to Plaintiff and Class Members about the ratings for its SPF factor.

129.    In making these false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a premium for a higher rated SPF factor over lesser rated SPF factors, furthering Defendant's private interest of increasing sales for its product and decreasing sales of products that are truthfully advertised by Defendant's competitors.

130.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive statements and representations, Defendant injured Plaintiff and Class Members in that they paid a premium price for the Product which was not as represented.

131.    In making the representations of fact to Plaintiff and Class Members described herein, Defendant has failed to fulfill its duties to disclose material facts about the Product.  The

31

failure to disclose the true SPF rating for the Product was caused by Defendant's negligence and carelessness.

132.    Defendant, in making these misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the misrepresentations were not true.  Defendant made and intended the misrepresentations to induce the reliance of Plaintiff and Class Members.

133.    The Plaintiff and Class Members relied on these false representations and non-disclosures by Defendant when purchasing the product, upon which reliance was justified and reasonably foreseeable.

134.    As a result of Defendant's wrongful conduct, Plaintiff and Class Members have suffered and continue to suffer economic losses and other general and specific damages, including amounts paid for the product and any interest that would have been accrued on these monies, all in the amount to be determined at trial.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its quality control and product labeling practices and to comply with applicable state and federal law;

(c) Awarding monetary damages, including treble and punitive damages, pursuant to GBL § 349 and GBL § 350;

(d)  Awarding compensatory damages;

(e)  Awarding punitive damages;

(f)  Awarding Plaintiff and Class Members their costs and expenses incurred in this action,

including reasonable allowance of fees for Plaintiff's attorneys and experts, and

reimbursement of Plaintiff's expenses; and

(g)  Granting such other and further relief as the Court may deem just and proper.

Dated: December 4, 2015

**THE SULTZER LAW GROUP, P.C.**

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq. (Bar ID #: JS4546)
Joseph Lipari, Esq. (Bar ID #: JL3194)
Jean M. Sedlak, Esq. (Bar ID #: JS4895)
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

*Counsel for Plaintiff and the Class*

33