UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
ELI DAYAN, on behalf of himself and others             :
similarly situated,                                    :
                                                       :
                    Plaintiff,                         :      **REPORT AND RECOMMENDATION**
                                                       :
          -against-                                    :      15 Civ. 6895 (DLI) (VMS)
                                                       :
SWISS-AMERICAN PRODUCTS, INC.,                         :
                                                       :
                    Defendant.                         :
-------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Eli Dayan (the "Plaintiff") brings this action against Defendant Swiss-American

Products, Inc. (the "Defendant"), alleging violations of the Magnuson-Moss Warranty Act

("MMWA"), 15 U.S.C. § 2301 et seq.; the consumer-protection laws of 42 states and the District

of Columbia, as well as common-law breach-of-express-warranty, breach-of-implied-warranty,

unjust enrichment and negligent representation.[1]  On referral before the Court from the

Honorable Dora L. Irizarry is Defendant's motion to dismiss.  For the reasons stated herein, this

Court respectfully recommends that the District Court grant the motion in part to dismiss

Plaintiff's MMWA claim, and deny the remainder of the motion.

---

[1] Plaintiff does not specify whether his common law claims are asserted under the same state
laws as his statutory claims or under different state laws.

## I.     BACKGROUND[2]

Plaintiff is a purchaser of the sunscreen EltaMD UV Aero ("the product").  See Compl., ECF No. 1 ¶ 1.  Defendant owns the Elta MD trademark and sells sunscreen under it meant to prevent sunburn and decrease the risk of skin cancer.  Id. ¶ 2.

Defendant warrants that the product "provides sheer but sure sun protection" and is SPF-45.  Id. ¶ 3.  SPF stands for "sunburn protection factor" and, as explained by the Food & Drug Administration ("FDA"), "SPF is a measure of how much solar energy (UV radiation) is required to produce sunburn on protected skin (i.e., in the presence of sunscreen) relative to the amount of solar energy required to produce sunburn on unprotected skin.  As the SPF increases, sunburn protection increases."  Id. ¶ 5.[3]  The Food, Drug and Cosmetic Act ("FDCA") prohibits sunscreen labeling that is false or misleading.  Id. ¶ 8 (citing 21 U.S.C. § 352(a); 21 U.S.C. § 362(a)).  21 C.F.R. § 201.327(a)(1) requires that every sunscreen contain an SPF value derived from FDA-approved testing.  Id. ¶ 10.  Plaintiff alleges that reasonable consumers "have become familiar with SPF values because SPF values have appeared on sunscreen product labels for decades.  And, reasonable consumers have correctly learned to associate higher SPF values with greater sun protection."  Id. ¶ 10.  Thus, consumers allegedly expect a higher SPF value to

---

[2] These facts and allegations are drawn from the Complaint; they are accepted as true solely for the purpose of this motion.  See Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Inv. Management Inc., 712 F.3d 705, 717 (2d Cir. 2013) ("for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true").  Where important facts are not contained in the Complaint but in other documents, that is noted, but those facts are not entitled to a presumption of truth.

[3] Quoting http://www.fda.gov/aboutfda/centersoffices/officeofmedicalproductsandtobacco/cder/ucm106351.htm (last visited Dec. 2, 2016).

correlate with stronger protection from the sun, and they are willing to pay a premium for sunscreens with higher SPF values.  Id. ¶¶ 11-12.

Plaintiff purchased the product through his physician in the summer of 2015, and he alleges it did not work.  Id. ¶ 15.  He had the product's SPF-value tested, and he attaches to his Complaint what appear to be two test results that found the product to have an SPF value of 18 and 22, respectively.  Id. ¶ 16 & Ex. 3.  Plaintiff alleges that the test finding the product is SPF-18 was conducted in accordance with FDA-testing protocol.  Id. ¶ 17.  He does not make any representations about the testing that found the product to have an SPF of 22.  Defendant argues that the test finding the product has an SPF value of 22 was not performed in accordance with FDA-testing protocol, and it points out ways in which the testing was deficient.  Mot. To Dismiss, ECF No. 12, at 3.  In addition, Defendant attaches four test results of its own, which allegedly were conducted in accordance with FDA-testing policy and all of which determined the product to have an SPF of 45.  Id. Exs. 1-4.

Defendants moves to dismiss the Complaint because it claims that 1) Plaintiff's claims are expressly and impliedly pre-empted; 2) Plaintiff does not state a claim under the MMWA; and 3) Plaintiff does not state a claim generally given Defendant's four test reports that found the product to have an SPF of 45.

## II.    DISCUSSION

### a.  Rule 12(b)(6) Legal Standard

Rule 8(a)(2) requires a complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a)(2).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The pleading standard of Rule 8 does not require "detailed factual allegations, but demands "more than labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

Prior to filing a responsive pleading, a defendant may move to dismiss a complaint pursuant to Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 113 (2d Cir. 2010) (quoting Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998)).  The court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [the] plaintiff's favor." In re Thelen LLP, 736 F.3d 213, 218 (2d Cir. 2013).  Nonetheless, courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)); see Quitoriano v. Raff & Becker, LLP, 675 F. Supp. 2d 444, 448-49 (S.D.N.Y. 2009) ("At the outset of deciding a motion to dismiss, the court may identify unsupported legal conclusions contained in the pleadings that are not entitled to an assumption of truth.").

### b.  Pre-Emption

### i.  The Food, Drug and Cosmetic Act

The Food, Drug and Cosmetic Act authorizes the FDA to regulate, among other things, the ingredients and labeling of nonprescription drugs such as the sunscreen products at issue. The FDCA was amended by the Food and Drug Administration Modernization Act of 1997

(Pub. L. No. 105-115 (Nov. 21, 1997) 111 Stat. 2296) ("Modernization Act"), which included a provision expressly pre-empting state law requirements regarding nonprescription drugs, including sunscreen products.  Section 751 of the FDCA, 21 U.S.C. § 379r(a), specifically prohibits state requirements that are not identical with federal requirements:  "no State . . . may establish or continue in effect any requirement (1) that relates to the regulation of a drug . . . and (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under this chapter . . . ."  Such state "requirement[s]" include those concerning "public information" or "public communication relating to a warning."  Id., subd. (c).

The FDCA contains a "savings clause" which states, inter alia, that "[n]othing in this section shall prevent a State or political subdivision thereof from enforcing, under any relevant civil or other enforcement authority, a requirement that is identical to a requirement of this chapter."  21 U.S.C. § 379f.

### ii.  Standard

The doctrine of pre-emption mandates that "when Congress has chosen to legislate pursuant to its constitutional powers, then a court must find local law pre-empted by federal regulation whenever the challenged state statute 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 317 (1981) (quoting Perez v. Campbell, 402 U.S. 637, 649 (1971)).  The rationale lies in respect for the Supremacy Clause, U.S. Const., Art. VI, Cl. 2, which invalidates state laws that "interfere with, or are contrary to the laws of Congress."  Gibbons v. Ogden, 22 U.S. 1, 211 (1824).  Defendant argues that both express pre-emption and implied pre-emption are at issue here.

### iii.  Plaintiff's Claims Are Not Expressly Pre-Empted

Express pre-emption occurs when "Congress . . . withdraw[s] specified powers from the States by enacting a statute containing an express pre-emption prevision." Arizona v. United States, — 565 U.S. —, 132 S. Ct. 2492, 2500-01 (2012).

21 U.S.C. § 379r(a) is the FDCA's express pre-emption provision.  As noted above, it specifically prohibits state requirements that are not identical with federal requirements:  "no State . . . may establish or continue in effect any requirement- (1) that relates to the regulation of a drug . . . and (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under this chapter. . . ."  Thus, a state law that applies to drugs or cosmetics is pre-empted if it imposes a requirement that is not identical to the requirements of the FDCA and the FDA's regulations.  See Ackerman v. Coca–Cola Co., No. 09 Civ. 395 (JG) (RML), 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010) ("[T]here are two ways plaintiffs may escape [the FDCA's] preemptive force:  (1) if the plaintiffs' claims seek to impose requirements that are identical to those imposed by the FDCA; or (2) if the requirements plaintiffs seek to impose are not with respect to claims of the sort described in [the Act]."); In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig., 588 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) ("Where federal requirements address the subject matter that is being challenged through state law claims, such state law claims are preempted to the extent they do not impose identical requirements.").

Courts differ on the degree of distinction from federal law that is permissible in the express pre-emption context.  Decisions taking the strictest approach as to express pre-emption have reasoned that a state-law cause of action is pre-empted both "when a state law prohibits labeling that is permitted under federal law" as well as when it "prohibits labeling that is not prohibited under federal law." Bowling, 65 F. Supp. 3d at 375.  Under this view, "[t]he standard

. . . is not whether a state law actively undermines federal law.  It is whether state law diverges from federal law at all."  <u>Id.</u>; <u>see</u> <u>Turek v. Gen. Mills, Inc.</u>, 662 F.3d 423, 427 (7th Cir. 2011) ("The disclaimers that the plaintiff wants added to the labeling of the defendants' [food product] are not identical to the labeling requirements imposed on such products by federal law, and so they are barred."); <u>PepsiCo</u>, 588 F. Supp. 2d at 534 ("[S]tate law causes of action . . . are preempted where they impose obligations not imposed by federal law.").   Thus, courts employing <u>Bowling</u> and <u>Turek</u>'s stricter approach would find that holding defendants liable for conduct that is unlawful under state law but involves areas in which the FDA chose not to regulate would be the equivalent of holding defendants liable to standards that are not "identical" to federal law.

Other courts have applied pre-emption rigidly, doing so only where the state law imposes requirements that are not identical to federal law in an area in which the FDA engages in some regulation, and not pre-empting claims involving areas the FDA has determined not to regulate, in contrast to <u>Bowling</u> and <u>Turek</u>.  <u>See</u> <u>e.g.</u>, <u>Astiana</u>, 783 F.3d at 758; <u>Vt. Pure</u>, 2006 WL 839486, at *6.  These cases hold that the relevant "scope" of federal law is defined by the FDA's regulatory choices.  If the FDA regulates a given subject matter, it pre-empts all non-identical state laws within that subject matter.  If the FDA does not regulate a particular subject matter, express pre-emption will not apply.

At least one court in this District has taken a broader approach to the interaction between the FDCA and state consumer-protection statutes, holding that they "serve complementary, though somewhat overlapping, roles," whereby the FDCA "constitutes only a floor upon which states can build additional protections."  <u>Jovel v. i-Health, Inc.</u>, No. 12 Civ. 5614 (JG), 2013 WL 5437065, at *6 (E.D.N.Y. Sept. 27, 2013).  In <u>Jovel,</u> the plaintiff sued the manufacturer of

BrainStrong dietary supplements, alleging that the product did not support brain health as represented. The court held that the claims were not pre-empted because they did not rely on FDCA requirements or claim that defendant violated it. See id. Although the statements that the plaintiff claimed were deceptive were part of the products' labeling and touched on subject matter regulated by the FDA, the court held that consumer-protection claims founded on the statements' falsity were not preempted. See id. The court reasoned that pre-emption only applies where state law requirements plainly conflict with federal requirements, most commonly where a state law claim would prohibit conduct that is explicitly permitted by federal law.

Under even the strictest of these standards, Plaintiff's claims are not expressly pre-empted. The FDCA prohibits sunscreen labeling that is false or misleading. See 21 U.S.C. § 352(a); 21 U.S.C. § 362(a). The FDCA also requires that every sunscreen contain an SPF value derived from FDA-approved testing. 21 C.F.R. § 201.327(a)(1). Plaintiff's claims rest on the allegation that the product was advertised as having a SPF value of 45 when it has in fact a lower, less protective number, thus deceiving Plaintiff. Were Plaintiff to succeed in this action, Defendant would be held liable for failing to label properly the product's SPF value, a standard identical to the standard established by the FDCA. Plaintiff asks that the product conform precisely to rules established by the FDCA; namely, that the product display an accurate SPF value. This is what the FDCA already requires, and so the FDCA's "savings clause" applies to Plaintiff's claims. See 21 U.S.C. § 379f ("Nothing in this section shall prevent a State or political subdivision thereof from enforcing, under any relevant civil or other enforcement authority, a requirement that is identical to a requirement of this chapter.").

Defendant cites to non-binding cases and argues that they support holding that Plaintiff's claims are expressly pre-empted, but each of these cases involves a plaintiff attempting to hold a

defendant liable for conduct not proscribed by the FDCA.  For instance, in <u>Gisvold v. Merck &</u> <u>Co.</u>, 62 F. Supp. 3d 1198 (S.D. Cal. 2014), the plaintiff brought claims against the defendant under California's consumer protection laws for allegedly misleading labeling on the defendant's sunscreen; specifically, the sunscreen's lack of a disclaimer that SPF-values above 50 no longer provide proportional protection from the sun as the SPF increases.  <u>See</u> 62 F. Supp. 3d at 1200-01.  The defendant argued that the FDCA requires sunscreen manufacturers to put an accurate representation of a product's SPF-value, including for values above 50, and it does not require a disclaimer regarding the relative effectiveness of sunscreens above SPF-50.  <u>See</u> <u>id.</u> at 1202.  The plaintiff argued that "she was not seeking to disrupt existing federal regulations, but rather to provide greater consumer protections that are consistent with FDA regulations."  <u>Id.</u> (internal question marks removed).  The court noted that "in seeking to provide greater consumer protections, [p]laintiff targets [defendant's] sunscreen label (which complies with current FDA regulations), and proposes a disclaimer regarding the level of sunscreen effectiveness beyond SPF 50."  <u>Id.</u> at 1202-03.  The court concluded that "[b]ecause the proposed disclaimer plainly adds to and is not identical with the FDA's requirements, [p]laintiff's action is expressly pre-empted under 21 U.S.C. § 379r."  <u>Id.</u> at 1203.  The same is true of the other cases that the Plaintiff cites.  <u>See</u> <u>Bimont v. Unilever U.S., Inc.</u>, No. 14 Civ. 7749 (JPO), 2015 WL 5256988, at *6 (S.D.N.Y. Sept. 9, 2015) ("Under a strict approach to FDCA pre-emption, this is sufficient to bar Plaintiffs' claims:  A state rule forbidding non-functional slack-fill in drugs and cosmetics would impose a requirement that is in addition to or not identical with federal law, and it would do so on a subject matter that clearly could be regulated by the FDA."); <u>Crozier v. Johnson &</u> <u>Johnson Consumer Cos.</u>, 901 F. Supp. 2d 494, 503 (D.N.J. 2012) (holding FDCA provided that states could not establish any requirement that related to regulation of nonprescription drugs that

was different from FDCA requirements); Eckler v. Neutrogena Corp., 238 Cal. App. 4th 433, 458 (2015) (holding that claim was pre-empted when it would have required "a corrective advertising campaign" beyond the scope of FDCA requirements).

For these reasons, the Court respectfully recommends finding that Plaintiff's claims are not expressly pre-empted.

### iv.  Plaintiff's Claims Are Not Impliedly Pre-Empted

Implied pre-emption arises when, "in the absence of explicit statutory language . . . Congress intended the Federal Government to occupy [a field] exclusively," or when state law "actually conflicts with federal law."  English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990).  A claim maybe impliedly pre-empted when it concerns a field in which "[1] the pervasiveness of the federal regulation precludes supplementation by the States, [2] the federal interest in the field is sufficiently dominant, or [3] 'the object sought to be obtained by the federal law and the character of obligations imposed by it . . . reveal the same purpose.'"  Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 300 (1988) (ellipsis in original) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).

In Medtronic v. Lohr, 518 U.S. 470, 485 (1996), the Supreme Court held that implied pre-emption does not encompass state rules that merely duplicate the FDA's rules regulating manufacturing practices and labeling.  See 518 U.S. at 495.  Thus, a state law claim that provides a traditional damages remedy for violations of common-law duties will be allowed to stand, when those duties parallel federal requirements.  See id.  The Court also explained that "because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action."  Thus, there is a presumption that federal law does not impliedly pre-empt state law absent other factors.  See id.

The Supreme Court has most recently considered the issue of implied pre-emption with regards to the FDCA in Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 352-53 (2001), on which Defendant relies heavily in its motion.  In Buckman, the Supreme Court held that because Congress intended that the FDCA be enforced exclusively by the federal government, see 21 U.S.C. § 337(a), claims seeking to enforce FDCA regulations, or claims for which the violation of FDCA regulations were a "critical element" of the case were impliedly pre-empted. The plaintiffs in Buckman contended that a medical device manufacturer had obtained FDA approval for its product only after making fraudulent misrepresentations to the federal agency. Claiming that the FDA would not have approved the device but for these misrepresentations, the plaintiffs sought damages under California state law.

The Court began by stating that "[p]olicing fraud against federal agencies is hardly a field which the States have traditionally occupied."  Id. at 347 (internal citation & quotation marks omitted).  Because the presumption against pre-emption of state law only applies to areas that implicate federalism concerns, i.e. areas that are the historic primacy of state regulation, the presumption did not apply to the fraud-on-the-FDA claims.  Id.  In the absence of any presumption against pre-emption, the Court found that fraud-on-the-FDA claims conflicted with, and were therefore impliedly preempted by, federal law.  "The conflict stems from the fact that the federal statutory scheme amply empowers the FDA to punish and deter fraud against the Administration, and that this authority is used by the Administration to achieve a somewhat delicate balance of statutory objectives."  Id. at 348.

The Court emphasized that the plaintiffs' claims were not rooted in traditional state law, and were instead derivative of federal law:

> [W]ere plaintiffs to maintain their fraud-on-the-agency claims here, they would not
> be relying on traditional state tort law which had predated the federal enactments

in questions. On the contrary, the existence of . . . federal enactments is a critical element in their case.

Id. at 353.  This was important to the Court in distinguishing its precedent in Medtronic.

Medtronic, the Buckman Court said, involved a "common-law negligence action against the manufacturer of an allegedly defective" product:

> [T]he Medtronic claims arose from the manufacturer's alleged failure to use reasonable care in the production of the product, not solely from the violation of FDCA requirements.  In the present case, however, the fraud claims exist solely by virtue of the FDCA disclosure requirements.  Thus, although Medtronic can be read to allow certain state-law causes of actions that parallel federal safety requirements, it does not and cannot stand for the proposition that any violation of the FDCA will support a state-law claim.

531 U.S. at 352-53 (internal citation omitted).  The Court used similar reasoning to distinguish its precedent in Silkwood v. Kerr-McGee Corp., 464 U.S. 238 (1984):  "Silkwood's claim was not based on any sort of fraud-on-the-agency theory, but on traditional state tort law principles of the duty of care owed by the producer of plutonium fuel pins to an employee working in its plant."  Buckman, 531 U.S. at 353.

The Second Circuit analyzed the contours of implied pre-emption after Buckman in Desiano v. Warner-Lambert & Co., 467 F.3d 85, 93 (2d Cir. 2006), aff'd sub nom. Warner-Lambert Co., LLC v. Kent, 552 U.S. 440 (2008).[4]  There, plaintiffs alleged they were injured by Rezulin, a diabetes-treatment drug, and they brought suit asserting various state common law claims including, inter alia, breach of implied and express warranties, negligence, negligent misrepresentation, negligence per se, fraud, defective design, defective manufacturing, and loss

---

[4] An equally divided Supreme Court affirmed the Second Circuit's decision with the Chief Justice not taking part in the case's consideration.  Warner-Lambert Co., LLC v. Kent, 552 U.S. 440 (2008).

of consortium.  The district court held that the claims were impliedly pre-empted based on Buckman, but the Second Circuit disagreed and reversed.  Id.

The Court of Appeals began by noting that, unlike in Buckman, the presumption against pre-emption did apply given the facts in Kent.  See id. at 93-94.  The claims at issue could not reasonably be characterized as a state's attempt to police fraud against the FDA, and the legal framework was meant to regulate state-based tort liability, something the Kent Court found fell squarely within a state's prerogative to "regulat[e] matters of health and safety, which is a sphere in which the presumption against pre-emption applies, indeed, stands at its strongest."  Id. at 94.

The court distinguished the nature of the claims in Kent from those in Buckman.  The Second Circuit noted that "[t]he Buckman Court suggested that the source and 'vintage' of the duty the drug maker is accused of breaching in 'fraud-on-the-FDA' claims is different from the source and 'vintage' of the duty that obtains in traditional tort claims."  Id.  In Kent, the plaintiffs were asserting claims that sounded in traditional state tort law, unlike the fraud-on-the-FDA claims at issue in Buckman.  See id.  In Buckman, the alleged violations depended entirely on violations of the FDCA, which forbids fraud against the FDA in the drug approval process.  See id.

Following Buckman and Kent, courts have distinguished expressly or impliedly pre-empted claims from viable ones as follows:

> The plaintiff must be suing for conduct that violates the FDCA . . . but the plaintiff must not be suing because the conduct violates the FDCA (such a claim would be impliedly preempted under Buckman). For a state-law claim to survive, then, the claim must be premised on conduct that both (1) violates the FDCA and (2) would give rise to a recovery under state law even in the absence of the FDCA.

In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig., 701 F. Supp. 2d 356, 369 (E.D.N.Y. 2010); see Pearsall v. Medtronics, Inc., 147 F. Supp. 3d 188, 194 (E.D.N.Y.

2015); Loreto v. Procter & Gamble Co., 515 F. App'x 576, 579 (6th Cir. 2013); In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig., 623 F.3d 1200, 1204 (8th Cir. 2010); Riley v. Cordis Corp., 625 F. Supp. 2d 769, 777 (D. Minn. 2009)).  In other words, a state law claim will not be expressly pre-empted if the conduct it complains of also violates the FDCA, and the plaintiff does not ask the court to hold manufacturers to standards beyond what the FDCA establishes.  See In re Bayer, 701 F. Supp. 2d at 376-78.  At the same time, to avoid implied pre-emption, a claim must be one that sounds in traditional state tort law and would exist even if the FDCA had not been enacted, i.e. the claim must be parallel to the FDCA and not depend on it. See id.  In Bayer, for instance, the plaintiffs claimed, inter alia, that defendants misrepresented the safety and effectiveness of their low-dose aspirin-combination products.  See id. at 375. According to the plaintiffs, the combination products were advertised as appropriate for long-term use even though they were not; one product was advertised as a source of calcium even though it was not; and another was marketed as reducing cholesterol and providing cardiovascular benefits even though someone taking one tablet a day as part of a low-dose aspirin regimen would only be ingesting half the recommended amount of phytosterols required for that effect.  See id.  The court held that "[a]lthough these statements touch on areas regulated by the FDA, and may even require reference to FDA definitions as to what the requirements are for adequate sources of calcium and phytosterols and what the dangers of larger doses of aspirin are, they are not preempted" because the claims are "traditional claim[s] of consumer misrepresentation, not an attempt to enforce the FDCA's labeling requirements."  Id.  The court concluded that plaintiffs "threaded the needle and alleged conduct that violates the FDCA but sounds in traditional principles of state law and would give rise to recovery even had the FDCA never been enacted."  Id.

Plaintiff's claims are not impliedly pre-empted.  First, the claims represent the states regulating the health and safety of their citizens, fields which the states traditionally occupy and in which there is a strong presumption against federal pre-emption.  See Medtronic, 518 U.S. at 485 (1996); N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654-55 (1995).  This is distinct from the claims in Buckman, which did not involve arenas traditionally regulated by the States (i.e. fraud against a federal agency) and that concerned the federal government itself, and so that presumption did not apply.

Second, the claims "parallel federal safety requirements" but are not premised principally (let alone exclusively) on FDCA regulations.  Defendant seems to argue that implied pre-emption applies because Plaintiff's claim is grounded in conduct that, if true, also violates the FDCA.  See Mot. to Dismiss, ECF No. 12 at 11-12 ("Plaintiff's claims are also impliedly pre-empted because they are grounded solely upon an alleged violation of the FDCA's labeling requirement. . . . All of [plaintiff's] claims derive solely from the alleged violation of [the FDCA's] prohibition of false labeling of SPF values.  Insofar as [p]laintiff is suing because his conduct allegedly violates the FDCA, such a claims is also impliedly pre-empted under Buckman.") (internal quotation marks & alterations removed).[5]  Although the FDCA forbids false labeling of OTC products, Plaintiff bases his allegations not on the FDCA prohibition, but on the consumer-protection laws in many states, chiefly New York's General Business Law

---

[5] To the degree Defendant is arguing that conduct premised on a violation of state law should be impliedly pre-empted when the conduct also violates the FDCA, such a position is at odds with Buckman.  See 531 U.S. at 352-53 ("Medtronic can be read to allow certain state-law causes of actions that parallel federal safety requirements.").

("GBL") §§ 349 and 350.[6]  Plaintiff alleges that Defendant affixed a label that falsely advertised

the product's SPF value as higher than it is in order to induce consumers to purchase the product

for a premium.  Those statutes forbid acts, practices and advertisements that mislead consumers

in a material respect when those misrepresentations injure consumers, including the use of false

labels and advertising.  See Marcus v. AT&T, 138 F.3d 46, 64 (2d Cir. 1998); Stutman v. Chem.

Bank, 95 N.Y.2d 24, 29 (N.Y. 2000).  Plaintiff also pleads several common law claims,

including breach-of-express-warranty and breach-of-implied-warranty claims.  Plaintiff's claims

do not themselves rely on the FDCA but on state law proscribing false or misleading labels.

Even if the FDCA did not exist, Plaintiff could credibly argue that affixing a label to sunscreen

with an inaccurate SPF is misleading and that his allegations if proven "would give rise to a

recovery under state law even in the absence of the FDCA."  Riley, 625 F. Supp. 2d at 777.

Although Plaintiff's allegations touch on areas regulated by the FDCA and require

reference to the FDCA's rules regarding measurement of SPF, Plaintiff's state law claims sit

next to federal regulations and are not premised on Defendant's alleged failure to comply with

FDCA requirements.  See Compl., ECF No. 1 ¶¶ 43-75.  In this sense his claims are identical to

the claims made by the plaintiff in Kent and Bayer which were not pre-empted.  See In re Bayer,

701 F. Supp. 2d at 375; Desiano, 467 F.3d at 93, aff'd sub nom. Warner-Lambert Co., LLC v.

---

[6] The Court's analysis is performed through the lens of the New York laws Plaintiff alleges that
Defendant violated.  Plaintiff also alleges Defendant violated the consumer protection laws of 41
other states and the District of Columbia.  Defendant makes a blanket assertion in its Motion that
because all "state law claims are grounded upon . . . a purported violation of the FDCA, they are
all pre-empted as a matter of law. . . ."  Mot. to Dismiss, ECF No. 12 at 14.  Defendant does not
analyze any state's laws, so the Court declines to analyze each states' laws independently.  Had
Defendant raised particular problems with a certain state law or laws, the Court would have
considered whether any such law was discordant with the FDCA.  See Sood v. Rampersaud, No.
12 Civ. 5486 (VB), 2013 WL 1681261, at *3 n.1 (S.D.N.Y. Apr. 17, 2013); F.R. v. Bd. of Educ.,
67 F. Supp. 2d 142, 149 (E.D.N.Y. 1999).

Kent, 552 U.S. 440 (2008).  While those claims "touch[ed] on areas regulated by the FDA, and may [have] even require[d] reference to FDA definitions," they were "traditional claim[s] of consumer misrepresentation" and "threaded the needle and alleged conduct that violates the FDCA but sounds in traditional principles of state law and would give rise to recovery even had the FDCA never been enacted."  In re Bayer, 701 F. Supp. 2d at 375; see Desiano, 467 F.3d at 93, aff'd sub nom. Warner-Lambert Co., LLC v. Kent, 552 U.S. 440 (2008) (finding claims against medical device manufacturer are not impliedly pre-empted by the FDCA pursuant to Buckman where the complaint "allege[s] a wide range of putative violations of common law duties long-recognized by Michigan's tort regime"); Jovel v. i-Health, Inc., 2013 WL 5437065, at *5 ("Plaintiff's claims that [d]efendant misrepresented the effectiveness of its products are traditional claims of consumer misrepresentation, not an attempt to enforce the FDCA's labeling requirements."); In re Bayer Corp., 701 F. Supp. 2d at 375 (refusing to find cause of action pre-empted where the claims "would give rise to recovery even had the FDCA never been enacted"); Jackson v. Balanced Health Prods., No. 08 Civ. 05584, 2009 WL 1625944, at *4 (N.D. Cal. June, 10, 2009) (rejecting defendants' argument that plaintiffs' claims that dietary supplement was misleadingly advertised were only attempts to enforce the FDCA "to the extent that [p]laintiffs have alleged that [d]efendants made statements that were fraudulent").

For these reasons, the Court respectfully recommends finding that Plaintiff's claims are not impliedly pre-empted.

### c.  The Magnuson-Moss Warranty Act

Plaintiff's Complaint includes a claim under the MMWA, along with his various state law claims.  "The MMWA grants relief to a consumer 'who is damaged by the failure of a . . .

warrantor . . . to comply with any obligation . . . under a written warranty.'" <u>Wilbur v. Toyota Motor Sales, U.S.A., Inc.</u>, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)).

Defendant argues that Plaintiff fails to state a claim under the MMWA because: 1) Plaintiff did not plead that he paid more than $25 for the product, as the MMWA requires, Mot. to Dismiss, ECF No. 12 at 17; 2) the product's label does not warrant it will "meet a specified level of performance over a specified period of time" as required by the MMWA, 15 U.S.C. § 2301(6)(A), <u>id.</u> at 15; 3) because § 2311(d) of the MMWA bars claims relating to "any written warranty the making or content of which is otherwise governed by federal law," <u>id.</u> at 16; and 4) Plaintiff's state law claims are allegedly pre-empted and MMWA claims are derivative of state law warranty claims, the MMWA claim is pre-empted, <u>id.</u> [7]

For the reasons discussed below, the Court respectfully recommends granting Defendant's motion to dismiss Plaintiff's MMWA claim.

### i. Plaintiff's MMWA Claim Should Not Be Dismissed Because He Fails To Plead He Spent $25 Or More On The Product

Defendants move to dismiss Plaintiff's claims under the MMWA for lack of subject-matter jurisdiction. Defendants rely on § 2310(d)(3) of the MMWA, which provides that "[n]o claim shall be cognizable in a suit" brought by a consumer for a violation of the MMWA if "the amount in controversy of any individual claim is less than the sum or value of $25," the total "amount in controversy is less than the sum or value of $50,000" or "the action is brought as a class action, and the number of named plaintiffs is less than one hundred." Defendant argues that Plaintiff's MMWA claims must be dismissed because the Complaint neither names one

---

[7] As discussed above, the Court does not think that Plaintiff's state law claims are pre-empted, and thus also does not find Plaintiff fails to state a claim under the MMWA for this specific reason.

hundred plaintiffs nor states that any individual plaintiff is seeking more than $25.  Plaintiff

argues that the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), has eliminated the

MMWA's stringent jurisdiction requirements.  Opp., ECF No 17, at 15.  CAFA grants district

courts "original jurisdiction of any civil action in which the matter in controversy exceeds the

sum or value of $5,000,000 . . . and is a class action in which" certain criteria are met.  Id.  The

question, then, is whether CAFA presents an alternative basis for jurisdiction over Plaintiff's

MMWA claims.

      Courts have disagreed about the answer to this question—namely, about whether the

MMWA's specific jurisdictional limitations trump CAFA's authorization of federal jurisdiction

over otherwise qualifying class actions—but most courts, including at least three Courts of

Appeal, have held that, where its conditions are met, CAFA provides an alternative basis for

jurisdiction without regard for the MMWA.  Compare Montanez v. D & D Auto, LLC, No. 15

Civ. 397 (VAB), 2016 WL 1254199, at *8 (D. Conn. Mar. 29, 2016) ("The Court is persuaded

that, based on the text of the Act and the reasoning of other district court rulings in this Circuit,

the MMWA does not allow cases to be brought in federal court unless the amount in controversy

is satisfied."); Jager v. Boston Rd. Auto Mall, Inc., No. 14 Civ. 614 (LLS), 2015 WL 235342, at

*4 (S.D.N.Y. Jan. 16, 2015) ("by enacting the specific jurisdictional limitations for Magnuson-

Moss claims in federal court, Congress foreclosed the exercise of supplemental jurisdiction over

Magnuson-Moss claims for less than $50,000"); Ebin v. Kangadis Food Inc., No. 13 Civ. 2311

(JSR), 2013 WL 3936193, at *1 (S.D.N.Y. July 26, 2013) (dismissing MMWA claims for lack of

subject-matter jurisdiction and holding that the argument that MMWA claims that do not satisfy

that statute's requirements may be brought pursuant to CAFA to be "flatly contradicted by the

plain text of the MMWA"); with Kuns v. Ford Motor Co., 543 Fed. Appx. 572, 574-75 (6th Cir.

2013) (finding that courts have subject-matter jurisdiction under CAFA even when the plaintiffs cannot not satisfy the MMWA); Birdsong v. Apple, Inc., 590 F.3d 955, 957 n.1 (9th Cir. 2009) (same); Voelker v. Porsche Cars N. Am., Inc., 353 F.3d 516, 522 (7th Cir. 2003) ("Supplemental jurisdiction over the Magnuson-Moss claims could have existed in the district court. That court had federal question jurisdiction over the TILA and FCRA claims and, because both of those claims and the Magnuson-Moss claims arise from the same controversy, it also had the discretionary authority to exercise supplemental jurisdiction over the Magnuson-Moss claims."); In re Sony Vaio Computer Notebook Trackpad Litig., No. 09 Civ. 2109 (BEN) (RBB), 2010 WL 4262191, at *4 (S.D. Cal. Oct. 28, 2010) (concluding that supplemental jurisdiction could be exercised over MMWA claim that did not involve more than $50,000, collecting cases holding the same); Diaz v. Paragon Motors of Woodside, Inc., 424 F. Supp. 2d 519, 527 (E.D.N.Y. 2006) (same); Chavis v. Fid. Warranty Servs., Inc., 415 F. Supp. 2d 620, 626 (D.S.C. 2006) (same); Barnes v. West, Inc., 249 F. Supp. 2d 737, 739 (E.D. Va. 2003) (holding that "MMWA claims that cannot independently be heard in federal court owing to the absence of the requisite amount in controversy, can still be heard in federal court in circumstances where supplemental jurisdiction is properly exercised under 28 U.S.C. § 1367").

The Court finds the analysis that CAFA grants MMWA jurisdiction to be persuasive, and respectfully recommends that Plaintiff's MMWA claim not be dismissed because of his failure to meet the $25 requirement.[8]

First, CAFA's grant of jurisdiction over qualifying class actions is quite broad. See Chavis, 415 F. Supp. 2d at 626. It provides district courts with original jurisdiction over "any civil action" that both satisfies the amount in controversy requirement and "is a class action," as

---

[8] As discussed below, the Court does believe there are other grounds to dismiss this claim.

long as certain specified other criteria are met.  28 U.S.C. § 1332(d)(2).  In turn, "class action" is expansively defined as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  Id. § 1332(d)(1)(B).  On its face, then, the plain text of CAFA seems to authorize suits like the one here.  That conclusion is reinforced by the fact that CAFA contains several enumerated exceptions, including the "local controversy" exception, see id. § 1332(d)(3), and the "home state exception," see id. § 1332(d)(4)(B).  In fact, Congress went so far as to identify claims brought pursuant to specific statutory provisions—namely sections of the Securities Act of 1933 and the Securities Exchange Act of 1934—to which CAFA does not apply.  See id. § 1332(d)(9)(a), (c).  CAFA does not, however, carve out the MMWA, nor does it contain language (as the supplemental jurisdiction statute does, see 28 U.S.C. § 1367) to the effect that it applies "except . . . as provided otherwise by Federal statute."  The court may not assume that those omissions were "accidental," United States v. Jaffe, 314 F. Supp. 2d 216, 224 (S.D.N.Y. 2004), and must "assume that Congress is aware of existing law when it passes legislation," Hall v. United States, — U.S. —, 132 S. Ct. 1882, 1889 (2012) (internal quotation marks omitted).  Moreover, "[t]he ancient maxim expression unius est exclusio alterius (mention of one impliedly excludes others) cautions [the Court] against engrafting an additional exception to what is an already complex statute."  Doe v. Bin Laden, 663 F.3d 64, 70 (2d Cir. 2011) (internal quotation marks omitted).  Accordingly, and given the plain language of CAFA, there is no basis to read an MMWA exception into CAFA that Congress itself chose not to include.

Second, interpreting CAFA to allow plaintiffs to bring class actions alleging violations of the MMWA, even when they cannot satisfy the MMWA's jurisdictional limits, furthers the

purpose of CAFA without undermining the purposes of the MMWA's jurisdictional limitations. It is well established that "CAFA was passed with the clear intention of expanding 'federal court jurisdiction over class actions.'" Chavis, 415 F. Supp. 2d at 626 (quoting S. Rep. No. 109-14 at 42 (2005), 2005 U.S.C.C.A.N. 3, 40). It is also well established that the MMWA's jurisdictional provisions were intended "(1) to avoid trivial or minor actions being brought as class actions in the federal district courts; and, (2) to overcome the absence of an amount in controversy requirement." Id. at 622 (internal quotation marks omitted); see Dance v. U.S. Int'l Motors, 647 F. Supp. 1205, 1207 (D.D.C. 1986) (same). Treating CAFA as an alternative basis for jurisdiction is consistent with the goal of expanding federal court jurisdiction over significant class actions, but CAFA's own limitations—including its amount-in-controversy requirement, its required minimum number of class members, and the local controversy and home state exceptions—ensure that trivial and minor actions still cannot be brought as class actions in federal courts.

Third, a conclusion finding jurisdiction is consistent with the general rule of construction that "general grants of jurisdiction may not be relied upon to expand a very specific statute that either grants or limits jurisdiction." Danilov v. Aguirre, 370 F. Supp. 2d 441, 445 (E.D. Va. 2005); see Radzanower v. Touche Ross & Co., 426 U.S. 148, 153 (1976) ("It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum."). To be sure, the MMWA qualifies as a "specific statute," but CAFA itself is not a general jurisdictional statute akin to the statutes providing jurisdiction over all cases "arising under" the laws of the United States, see 28 U.S.C. § 1331, or in which the matter in controversy is over $75,000 and there is a diversity of citizenship, see 28 U.S.C. § 1332(a). Instead, CAFA pertains only to a narrow and

carefully delineated set of class actions in which the amount of controversy is more than $5,000,000, and any member of the class (1) "is a citizen of a State different from any defendant," (2) "is a foreign state or a citizen or subject of a foreign state and the defendant is a citizen of a State," or (3) "is a citizen of a State and any defendant is a foreign state or citizen or subject of a foreign state."  28 U.S.C. § 1332(d)(2).  Further, it includes several enumerated exceptions that are, themselves, carefully delineated.  See id. §§ 1332(d)(4), (d)(5), (d)(9).  CAFA, therefore, "is just as specific with respect to actions within its scope" as is the MMWA, In re Global Crossing, Ltd. Sec. Litig., No. 02 Civ. 910 (GEL), 2003 WL 21659360, at *2 (S.D.N.Y. July 15, 2003), and the rule that the specific governs over the general does not limit CAFA.

In short, consistent with the Courts of Appeals and several district courts that have addressed the issue, the Court believes that where, as here, the jurisdictional prerequisites of CAFA are satisfied, the Court may exercise subject-matter jurisdiction over a claim under the MMWA although the jurisdictional prerequisites of that statute may not be met.

### ii. Plaintiff Has Failed To Plead The Product Warrants That It Will Meet A Specified Level Of Performance Over A Specified Period Of Time

The MMWA defines a written warranty as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.

15 U.S.C. § 2301(6)(A) (emphasis added).

Here, the Complaint alleges that the product warrants itself as SPF-45 when it has a lower value.  Plaintiff does not allege that the product specifies that it will work over any period of

time.  Plaintiff argues that any warranty regarding a sunscreen's SPF value serves as an implicit

warranty as to its performance over time that is sufficient to satisfy the MMWA's requirements.

Opp., ECF No. 17 at 14.  This is contrary to the Federal Trade Commission's regulations, which

state that "a written affirmation of fact or a written promise of a specified level of performance

must relate to a specified period of time in order to be considered a 'written warranty'.  A

product information disclosure without a specified time period to which the disclosure relates is

therefore not a written warranty."  16 C.F.R. § 700.3.  Courts have consistently held that

products must explicitly specify a period of time in order to fall under the MMWA's ambit.

Compare Bowling, 65 F. Supp. 3d at 378 (label stating that toothpaste "Restores Enamel" not a

warranty under the MMWA because it does not state that it works over specified period of time);

In re Frito-Lay N. Am., Inc. All Nat. Litig., No. 12-MD-2413 (RRM) (RLM), 2013 WL

4647512, at *17 (E.D.N.Y. Aug. 29, 2013) (no claim under the MMWA because "All Natural"

label does not "constitute a promise that the product will meet a specified level of performance

over a specified period of time"); In re Scotts EZ Seed Litig., No. 12 Civ. 4727 (VB), 2013 WL

2303727, at *4 (S.D.N.Y. May 22, 2013) ("courts have found promises are written warranties

under the MMWA only if the promise clearly states the specific time period over which the

promised performance is to occur"); Hairston v. S. Beach Beverage Co., 12 Civ.1429, 2012 WL

1893818, at *6 (C.D. Cal. May 18, 2012) (even if representations that beverage was "all natural

with vitamins" and had a particular flavor "could somehow be construed as promises or

guarantees, they clearly do not specify a level of performance over a specified period of time");

Kelley v. Microsoft Corp., No. 07 Civ. 0475 (MJP), 2007 WL 2600841, at *5 (W.D.Wa. Sept.

10, 2007) (representation that computer was "Windows Vista Capable" not written warranty

because promise contained no temporal element); with Reid v. GMC Skin Care USA Inc., No.

15 Civ. 277 (BKS) (CFH), 2016 WL 403497, at *14 (N.D.N.Y. Jan. 15, 2016) (MMWA claim stated where product label promises improvement of skin "after 28 days"); Kelleher v. Marvin Lumber & Cedar Co., 891 A.2d 477, 503-04 (N.H. 2005) (promise that "all exterior wood [in the windows] is deep treated in a dry vac process with a pesticide and water repellant solution to permanently protect against rot and decay" constitutes written warranty under MMWA because promised performance is "permanent").  Plaintiff thus has failed to state a claim under the MMWA because he has failed to allege the product warrants anything regarding its performance over time.

### iii.  Plaintiff's MMWA Claim Should Be Dismissed Because The Product Is Subject To The FDCA's Regulations

Section 2311(d) of the MMWA states that the Act is "inapplicable to any written warranty the making or content of which is otherwise governed by Federal Law."  15 U.S.C. § 2311(d).  This provision further provides that:  "If only a portion of a written warranty is so governed by Federal law, the remaining portion shall be subject to this chapter."  Id.

Several courts that have considered whether section 2311(d) bars an MMWA claim founded on the labels of products governed by the FDCA have concluded that the MMWA claim is barred.  See Jasper v. MusclePharm Corp., No. 14 Civ. 02881 (CMA) (MJW), 2015 WL 2375945, at *5-6 (D. Colo. April 9, 2015) (finding that because dietary supplement product labels containing allegedly misleading claims about the supplement's attributes or effects were governed by the FDCA, § 2311(d) barred the plaintiff's MMWA claim), R&R adopted, 2015 WL 2375945 (D. Colo. May 15, 2015); Clancy v. The Bromley Tea Co., 308 F.R.D. 564, 577 (N.D. Cal. 2013); Viggiano v. Hansen Natural Corp., 944 F. Supp. 2d 877, 897 (C.D. Cal. 2013); Bates v. General Nutrition Ctrs., Inc., 897 F. Supp. 2d 1000, 1002 (C.D. Cal. 2012); Stewart v. Smart Balance, Inc., No. 11 Civ. 6174 (JLL), 2012 WL 4168584, at *14 (D.N.J. June 26, 2012);

Hairston v. South Beach Beverage Co., No. 12 Civ. 14290 (JFW), 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012); Kanter v. Warner-Lambert Co., 99 Cal. App. 4th 780, 797 (2002), cf. Reid, 2016 WL 403497, at *14 ("because the complaint alleges that [d]efendant has made warranties on its website, and the parties have not addressed whether there are portions of the warranties at issue in this case–like those on [d]efendant's website–that are not governed by the FDCA (and thus permitted under the MMWA) the Court declines to dismiss the MMWA claim at this juncture"); Kanfer v. Pharmacare US, Inc., No. 15 Civ. 0120 (JLB), 2015 WL 6742201, at *10 (S.D. Cal. Nov. 4, 2015) (denying the defendant's motion to dismiss, explaining that the issue of "[w]hether § 2311(d) precludes Plaintiff's MMWA claim is better suited for a motion for summary judgment, when the record is more fully developed and the parties further analyze the statutory scheme under the facts of the case").

Plaintiff brings his MMWA claim solely because of the product's SPF-45 label. Both parties agree this label is governed by the FDCA, and so § 2311(d) bars Plaintiff's MMWA claim.

For the foregoing reasons, the Court respectfully recommends dismissing the MMWA claim.

### D.  Plaintiff States A Plausible Claim For Relief

Defendant's final argument is that Plaintiff does not state a plausible claim for relief. To support this argument, Defendant attaches a number of its own tests of the product that it claims are in accordance with FDA testing regulations. Mot. To Dismiss, ECF No. 12, at 17-18 & Ex. 5. Each test shows the product is SPF-45. Id. Defendant also alleges that one of the two tests Plaintiff attached to the Complaint was not performed pursuant to FDA regulations because it uses a six-member panel instead of the FDA-required 10-member panel. Id. at 18. Plaintiff

reaffirms that the test that found the product was SPF-18 complied with FDA regulations, and says that Defendant's tests are themselves flawed, in ways which he alleges will become clear during discovery.[9]  Opp., ECF No. 17 at 16-17.  Defendant does not argue that Plaintiff's allegations fail to state a claim on their own.  Instead, it argues that the evidentiary weight of its own tests is sufficient to make Plaintiff's allegations implausible and thus insufficient under the standard enunciated in Iqbal, 556 U.S. at 678.

Defendant argues that, although normally the Court is limited to the four corners of the Complaint and its attachments when considering a 12(b)(6) motion, see DiFolco, 622 F.3d at 113, as Defendant provided its tests to Plaintiff before he filed his Complaint and as they are "integral" to his allegations, they are properly considered by the Court despite not being included in the Complaint, Mot. To Dismiss, ECF No. 12, at 18 (citing L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011)).

Even were the Court to determine that it may consider the tests that Defendant submitted, Defendant's argument is not persuasive.  "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  DiFolco, 622 F.3d at 113 (quoting Cooper, 140 F.3d at 440).  It is not the Court's role in evaluating a Rule 12(b)(6) motion to weigh competing evidence and determine which side's is the most persuasive.  See id. Plaintiff has alleged that the product falsely advertised itself as SPF-45 when its SPF is lower than that.  He has submitted tests that he alleges were conducted in compliance with FDA regulations that he claims substantiate his allegations.  Defendant's tests may ultimately prove

---

[9] A review of the test report attached to the Complaint confirms that while the test that found the product has an SPF of 22 only used a six-member panel, the test that found an SPF of 18 used a 10-member panel.  See Compl., ECF No. 1 Ex. 3.

more persuasive than Plaintiff's, but evaluating "'issues of fact, credibility, and the weight of the evidence'" when it comes to scientific studies is not the role of the Court on a motion to dismiss Sitt v. Nature's Bounty, Inc., No. 15 Civ. 4199 (MKB), 2016 WL 5372794, at *10 (E.D.N.Y. Sept. 26, 2016) (quoting Kardovich v. Pfizer, Inc., 97 F. Supp. 3d 131, 140 (E.D.N.Y. 2015)); see Hughes v. Ester C Co., 930 F. Supp. 2d 439, 461 (E.D.N.Y. 2013) ("[I]ssues concerning the weight that should be given to this study cannot be resolved on a motion to dismiss . . . ."); Quinn v. Walgreen Co., 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) ("Whether or not the studies support plaintiff's proposition that it is 'biologically impossible' to rebuild cartilage is an issue of fact the Court cannot resolve on a motion to dismiss."); Vasic v. Patent Health, LLC., No. 13 Civ. 849 (AJB) (MDD), 2014 WL 940323, at *4 (S.D. Cal. Mar. 10, 2014) (holding that plaintiff's claims were facially plausible because of the scientific studies cited in support, and finding that "the issue of whether the proffered studies do in fact show that [d]efendants' representations are provably false is a question not properly decided on a motion to dismiss"); Pearson v. Target Corp., No. 11 Civ. 7972, 2012 WL 7761986, at *2 (N.D. Ill. Nov. 9, 2012) ("[W]hether or not the proffered studies are applicable to Up & Up Triple Strength is a question of fact that I do not decide at this stage.").

For the foregoing reasons, the Court respectfully recommends denying this portion of Defendant's motion to dismiss.

## III.   CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the District Court grant the motion in part and deny it in part so that Plaintiff's claim under the MMWA be dismissed but his various state statutory and common law claims not be dismissed.

**IV.    OBJECTIONS**

This report and recommendation will be filed electronically.

Written objections to this report and recommendation must be filed within fourteen days

of service and in accordance with the Individual Rules of the Honorable Dora L. Irizarry.  28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file objections within the specified time

waives the right to appeal.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); <u>see</u> <u>Smith v. Campbell</u>,

782 F.3d 93, 102 (2d Cir. 2015).

Dated:  Brooklyn, New York
          January 3, 2017

*Vera M. Scanlon*
_____
          VERA M. SCANLON
          United States Magistrate Judge

29